The next case we'll hear for oral argument is Reid against Balota. Mr. Platt May it please the court, my name is Joseph Platt on behalf of my colleague Elijah Reid. I would like to reserve two minutes for rebuttal. This court should reverse the district court's grant of summary judgment on the basis of exhaustion because the district court has made another fundamental legal error. Here a conflicted question of whether Mr. Reid passed through every step of the Illinois Department of Corrections grievance handling process. On the one hand, with whether administrative remedies were available to him in the first instance. On the other, the PLRA requires inmates to properly exhaust administrative remedies before filing suit, but under the PLRA only available remedies must be exhausted. It is black letter law in the circuit and elsewhere that remedies are not available under the statute if an Illinois prison does not respond to a properly filed grievance. This court must look to the Illinois Administrative Code to determine what steps prisoners in prisons must follow as part of the grievance process. Any extra textual steps imposed on the prisoner by prison employees must be disregarded. The only steps that matter are those that are listed in the regulations. There are two relevant steps the prisoner must take to properly exhaust under the Illinois Code. First, he must submit a grievance. And second, he must send the warden's written determination and the grievance to an appellate body called the Administrative Review Board. In the normal course, exhaustion occurs when the board has acted on the appeal. But inmates cannot appeal to the board without receiving the warden's written determination, which the board expects to come on form D.O.C. 0047. The record shows that Mr. Reed never received the warden's determination on that form or on any other document, so he could not move to the next step in the grievance process. In the words of the Supreme Court's recent case of Ross v. Blake, the process became a simple dead end. As a procedural matter, exhaustion is an affirmative defense, so it's the law that's burdened to show first that remedies were available and second that Mr. Reed did not exhaust them. The law has failed at the threshold here. He's not shown that the prison returned Mr. Reed's properly filed grievance to him along with the warden's written determination. Without those documents, remedies were not available to Mr. Reed, so the exhaustion defense must fail. So in this case, Mr. Platt, I'm sorry, it's Judge Scudder. Can I ask you a question? One of the things that I found difficult, and I'd invite your adversary to address this as well, about the case here, it's not so much a point about your argument. It's trying to understand what time periods just apply under the regulations, under the 2016 Illinois regulations by their terms. And let me tell you what my understanding is, and you can tell me whether you think I'm right or whether I'm mistaken. The way that I read those regulations is that after Mr. Reed files his grievance, which he did here on what, August 2nd of 2016, or at least when it was received, under the regulations, 504830D in particular, there's a two-month period that's then opened up for him to receive a response from the warden. Is that right? No, Your Honor, I think there's, the Illinois regulations have a little bit of an elastic clause at the end, so it says there's a chunk of time, 60 days or two months, when reasonably feasible. Yeah, no, okay, fair enough, that's part of it, but two months, you know, where reasonably feasible, is that, do you agree that's the standard we're applying or looking at? No, I think the standard we're applying doesn't have to do with timing in this case. We don't have to get to timing because we end at the first element of the exhaustion defense, whether or not remedies were available. And when we're making the availability determination, we look at the whole record, both pre-filing conduct and post-filing conduct. And that approach is supported by this court's cases that find exhaustion had not obtained when a prisoner received a response after filing. So cases like the Perez v. Wisconsin case and the Ford v. Johnson case, the inmate filed a lawsuit and exhausted after filing. And this court held that exhaustion had not been properly conducted. And on the other side of that coin, we have the Piles v. Laiabosie case, which is really on all fours with this case, where the prisoner filed a grievance, never received a response, so we're looking at both conduct at the time of filing, as well as looking out into the future, Piles never received a response, just as Mr. Reed never received a response. This court held fairly clearly that remedies were not available to Piles. And the effect of that on availability is that the prisoner is considered to have exhausted administrative remedies. So talking about timing is really a non-sequitur in this case. We're talking about availability in the first instance. When you say never received a response, what you mean is never received a response from the warden, correct? Yes, that's exactly right, Your Honor. There's a bit of ambiguity in the way that the term response has been thrown around in the record, and I apologize. That may be partly my fault. What we do mean is the warden's written decision as required by the Illinois Department of Correction Regulations. Without that document, the prisoner is prevented from moving to the next step in the grievance process. And that's confirmed by the Administrative Review Board's response to Mr. Reed that we see in the record. I think it's at page 41 of the appendix. The Administrative Review Board rejects Mr. Reed's attempt to appeal this responsive memorandum to the board. They say, no, that's procedurally improper. You need to give us the warden's written decision. So it's not only codified in the regulations, but also as a matter of practice, the Administrative Review Board wants that determination from the warden in order to properly exhaust. So after Mr. Reed filed his July 28th grievance, which as you noted, Your Honor, was received on August 2nd, he never got the warden's determination. What he did get was that August 9th memorandum that told him that the grievance had been referred to Internal Affairs, but really gave him no other information in terms of timing or when he would be able to pursue the next step in the process. Pursue a claim in federal court. He sent the memorandum and the only other document that he got back from the grievance counselor, which was the July 28th emergency grievance. He sent those documents. Up to the Administrative Review Board, his attempt to exhaust within. Mr. Platt, you have 2 minutes remaining. So, without the response from, without the written determination from the warden in hand, Mr. Reed was prevented from. Personally exhaustion, the Administrative Review Board, I'd just like to address 2 points that. The defendant has made in his briefing and the 1st is that Mr. Reed was somehow under an obligation to resubmit. A grievance there's certainly we have not seen a case where. A prisoner is required to submit 2 grievances over the same set of facts. Defendant has acknowledged both below and appellate brief here. That the prison received the July 28th grievance that was properly filed. There's no dispute about that. And in fact, this case, this court's case called Charlie versus right now are. Pretty clearly holds that a prisoner is under no obligation. To file file, declarative grievances and 2nd, in the recent 28 J. Response defendant appellee suggest that. Mr. Reed was under some obligation to explain to the Administrative Review Board. That he did not receive the warden's response, but that kind of requirement is not written down anywhere in the regulations. In this court's case in Davis versus nation. Flatly states that any extra textual regulations. Any extra textual steps imposed by prison employees should be disregarded by by federal courts. Uh, I'll reserve the remainder of my time for a lot of rude requested. This court vacates. This report summary judgment and remand for trial of emergency. And it please the court assistant attorney general Carson Griffiths on behalf of defendant Mark. I'd like to begin with judge Scottish question regarding the time period here and the standard that's applicable. Under the regulations. I would agree that the 2 month time limit is relevant here because the regulations lay out a process whereby a grievance officer. Makes a recommendation to the warden who then has to advise your fender. Uh, of the decision within 2 months after receipt of the written written grievance where reasonably feasible under the circumstances. And I'd like to note that Mr Reed did not meet that standard here, or he did not give the prison a reasonable time to comply with that standard. Because he waited less than 2 months from the date he received the response indicating that his grievance had been forwarded to eternal affairs and just to shade over a month or 2 months from the time he filed his grievance until he filed his lawsuit. Um, and I think that also, uh, Mr Griffiths grievance officers. Mr Griffiths, this is judge Easterbrook. Did the prison ever rule on the grievance? No, it hasn't ruled on well, then what difference does it make when Reed filed the lawsuit? Well, read filed the lawsuit just 2 months after receiving notification that the grievance that's fine, but the question I'm asking is what difference does it make if the prison has simply ignored the grievance? What difference does it make whether he filed 2 months, 4 months, 6 months, 1 year? All is irrelevant if there was never any ruling on the grievance. Because there was then never any opportunity to take an administrative appeal. The prison did not ignore Mr. Reed's grievance, so the prison, uh, received the grievance and according to the grievance officer citizens declaration, I wish you would address my question counsel, which is what difference does it make when the lawsuit began? It makes a difference because. Under this court's precedent. Prisoners have to allow prisons a reasonable time to resolve a grievance on the merits before filing suit because the PLRA states. That. Administrative remedies must be exhausted. Council, I wish you would address my question. It calls for a concrete answer. What difference does it make or did it make? Is it your position, for example, that because the suit was filed, that's why the prison never acted? And then obviously my next question will be why, but is there some other concrete reason? The prison did not act in this circumstance because Mr. Reed did not agree to be interviewed by internal affairs and internal affairs had to investigate before the grievance officer could make a recommendation on the merits of the grievance to the warden and then the warden could issue the DOC 47 form. I must say this, this puzzles me. Why didn't the prison then reject the grievance on the ground that Reed refused to cooperate in the investigation? But I take it that we are assuming that the prison never ruled on the grievance in the end, right? Did the filing of the lawsuit prevent the prison from saying you didn't cooperate, so your grievance is dismissed? No, the filing of the lawsuit didn't prevent the prison from saying that, but anything that happens once the lawsuit is filed with respect to the exhaustion of remedies or not would be irrelevant. So, even if the prison did rule on the merits of the grievance after October 5th, 2016, Mr. Reed could not then say, well, I've exhausted my remedies since I've filed suit. And so I can continue litigating my case. Those remedies need to be fully exhausted before the lawsuit is filed. So, Mr. Griffiths, it's Judge Scudder. The part of your position that concerns me a bit is I understand your argument about the August 9th memo just fine. But after the August 9th memo, there's another piece of correspondence, at least one that goes to Mr. Reed. And that is a document that's dated August 31st from the Administrative Review Board. And that document, as one you know, it's in the appendix at 41, page 41, your adversary referred to it. It's one that tells Mr. Reed additional information is needed, but it says not a word about anything pending in front of the Internal Affairs Department. Right, so the Administrative Review Board, the Internal Affairs Department would be within Pontiac Correctional Center itself, and the Administrative Review Board is a separate agency that, you know, is an appeals agency that deals with all of the institutions in the Illinois Department of Justice. I understand that, but it sure seems to me that if there was a matter pending in front of Internal Affairs at the time that the ARB sent its August 31st correspondence, that it would tell Mr. Reed, hey, you've got to go through the Internal Affairs process. The point I'm trying to make is that if all you had was, or all we had in front of us was the August 9th memorandum, I think your point, your argument is a pretty good one. But that's not all we have. We have the August 31st. It says not a word to him about Internal Affairs. It does not say anything about Internal Affairs. I just don't know what, at that point in time, I mean, what is he supposed to do? He doesn't know that Internal Affairs is looking to talk to him. Well, Your Honor, I would disagree that he doesn't know Internal Affairs would be looking to talk to him. He did recognize in his declaration that he understood that his grievance had been sent to Internal Affairs, and that memorandum said it was sent to them for review and that the response was pending the outcome of the Internal Affairs. Yeah, but he swears under oath to a contrary version of facts. He says that Internal Affairs never came to see him. Correct. Your client says they came to see him, and he ignored them. So we have a factual dispute there. But I'm just not convinced that the record, as it stands on August 31st, 2016, fully aligns with the core of your argument. So the response on August 31st, again, there's a section on that form that provides no further redress would be considered. So if the ARB had rejected the appeal, it could have said that, but it did not. It said instead that it was asking for additional information. And the regulations that deal with ARB appeals state that the offender – it's essentially on the offender to provide the necessary information for the board to resolve it. So I don't think that the regulations put a duty on the board to investigate the status of any underlying investigation or anything like that. From the board's perspective, it's receiving this grievance and a memorandum saying that the Internal Affairs investigation was ongoing. So they're trying to figure out has that investigation concluded or not. And Mr. Reid could have responded with information saying this is why I don't have my DOC 47 form. They did not come to talk to me, something along those lines, but he never did that. Instead, he just ignored the request for additional information and filed the lawsuit. So with respect to the August 31st response from the ARB, I think, again, this wasn't a situation where the ARB said we're not going to consider this appeal. It's asking for more information, inviting him to respond, and he ignored that invitation. With respect to the time limit here, I think it's important to focus on the time limit between when the grievance was submitted and the lawsuit was filed because, as I stated, this court has held in Ford and in Alaska both that inmates must give a reasonable time for an investigation to occur. So even if there was a dispute of fact, and there is a dispute of fact about whether or why the investigation didn't go forward, Mr. Reid simply jumped the gun by only giving them two months to do so. So even if you take at face value his statement that they never came to see him, he still only waited two months for this investigation to occur. That's barely enough time for the warden to issue a response. And as Grievance Officer Simpson explained, it wasn't feasible for her to issue that response without the conclusion of the investigators about what had occurred. I'd like to address, counsel brought up the Piles case, which he submitted in his Rule 28 letter. That was the circumstance. Thank you, counsel. Well, Mr. Platt, you have four seconds left. How fast can you talk? Fast enough to say that Judge Federer was right when he asked what else was Mr. Reid supposed to do? And with that, we would request that this court vacate the district court's summary judgment ruling. Okay, thank you very much. The case is taken under advisement.